IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DRIT LP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-844-LPS-CJB |
| ) | |
| GLAXO GROUP LIMITED and HUMAN ) | |
| GENOME SCIENCES, INC., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Pending before the Court in this breach of contract case is Plaintiff DRIT LP's ("Plaintiff" or "DRIT") motion to remand this case to the Superior Court of the State of Delaware ("Delaware Superior Court") pursuant to 28 U.S.C. § 1447(c) and for an award of attorney fees and costs (the "Motion"). (D.I. 4) Defendants Glaxo Group Limited and Human Genome Sciences, Inc. ("Defendants" or "GSK") oppose the Motion. For the reasons set forth below, the Court recommends that DRIT's Motion be GRANTED with regard to the request for remand, and orders that the request for fees and costs be DENIED.[1]

I.   **BACKGROUND**

A.   **Factual Background**

This case arose out of a dispute between non-party Biogen Idec MA Inc. ("Biogen") and GSK regarding which of them was entitled to patent rights covering a lupus treatment that was eventually commercialized as GSK's drug Benlysta®. (D.I. 1, ex. 5, ex. A (hereinafter, "Am.

---

[1] A motion to remand is considered a dispositive motion; for that reason, the Court is titling this opinion as a Report and Recommendation. *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998); *Hutchins v. Bayer Corp.*, C.A. No. 08-640-JJF-LPS, 2009 WL 192468, at *3 (D. Del. Jan. 23, 2009).

Compl.") at ¶¶ 1-3)  In light of this dispute, the United States Patent and Trademark Office ("PTO") had declared an interference, which is a procedure used to determine which of two inventors who are seeking patents covering the same invention is in fact the rightful inventor. (*Id.* at ¶ 2)  In 2008, Biogen and GSK settled their dispute pursuant to a Patent License and Settlement Agreement (the "Agreement").  (*Id.* at ¶ 1)  Through this Agreement, Biogen gave up its patent rights in exchange for milestone payments and ongoing royalties from sales of Benlysta; Biogen's right to such payments would last through the expiration of "the last Valid Claim" of certain patents covering products like Benlysta, including United States Patent No. 8,071,092 (the "'092 patent"), which issued on December 6, 2011.  (*Id.* at ¶¶ 6, 8-9, 21, 32)  In 2012, DRIT obtained an assignment of Biogen's royalty rights under the Agreement.  (*Id.* at ¶ 46)

On April 27, 2015, GSK voluntarily filed a form with the PTO to statutorily disclaim the '092 patent.  (*Id.* at ¶ 50)  A statutory disclaimer is a statement filed by a patent owner with the PTO by which the patent owner relinquishes its legal rights to some or all of a patent's claims. (*Id.* at ¶ 51); *see also* 35 U.S.C. § 253.  There is a required fee for a statutory disclaimer.  (Am. Compl. at ¶ 52); *see also* 35 U.S.C. § 253.  After filing the statutory disclaimer, GSK stopped paying royalties to DRIT on sales of Benlysta in the United States, effective April 27, 2015; GSK's contention was that, pursuant to the terms of the Agreement, once it disclaimed the '092 patent, there was no longer any "Valid Claim" covering the product in the United States (and thus it no longer owed DRIT any royalty payments).  (Am. Compl. at ¶¶ 56, 59)

In July 2016, DRIT filed a complaint against GSK in the Delaware Superior Court asserting a claim for breach of contract ("Count I") and a claim for breach of the implied covenant of good faith and fair dealing ("Count II") under Delaware state law; the complaint was

2

premised upon GSK's failure to pay royalties on sales of Benlysta after April 27, 2015, in light of GSK's statutory disclaimer of the '092 patent.  (D.I. 1, ex. 1 at ex. 3 at ¶¶ 61-75)  Thereafter, GSK moved to dismiss both claims.  (*Id.*, ex. 1, ex. 4 at 1)  The Delaware Superior Court dismissed Count I, on the ground that a "Valid Claim" is defined in the Agreement as one that has not been disclaimed, and here, the '092 patent had in fact been disclaimed by GSK.  (*Id.* at 11-18)  However, the Court denied GSK's motion to dismiss as to Count II.  (*Id.* at 18-20)

During discovery with respect to Count II, DRIT learned that the required fee for GSK's statutory disclaimer was not actually paid on April 27, 2015; instead, it was not paid until July 16, 2015.  (Am. Compl. at ¶ 50; *id.*, ex. C)  When GSK filed the statutory disclaimer form on April 27, 2015, it had authorized the PTO to deduct any required fees from a deposit account. (D.I. 6, ex. 1)  But on July 16, 2015, GSK noticed that the PTO had not in fact removed the required $160 fee from its deposit account; GSK then simply affirmatively paid the fee.  (D.I. 1, ex. 6 at 4)

On April 10, 2018, DRIT filed a motion for leave to file an amended complaint (the "motion to amend") to add a second breach of contract claim ("Count III"); Count III sought royalty payments for the period between April 27, 2015 (when the statutory disclaimer form was filed) and July 16, 2015 (when the required fee was affirmatively paid by GSK).  (*Id.*, ex. 5)  On April 25, 2018, the Delaware Superior Court granted DRIT's motion to amend and deemed the amended complaint filed and served.  (D.I. 6, ex. 4)

GSK subsequently moved for summary judgment with respect to Count II, and it moved to dismiss Count III.  (*Id.*, ex. 3; D.I. 1, ex. 6 at 1-2; D.I. 1, ex. 10 at ECF Page No. 448) Meanwhile, DRIT moved for partial summary judgment with respect to Count III.  (*See* D.I. 1, ex. 10 at ECF Page No. 408, 468)  The motions were argued before the Delaware Superior Court

on June 18, 2018, (*see* D.I. 1, ex. 10 at ECF Page No. 551-52, 555), and on August 17, 2018, the Delaware Superior Court issued an opinion on the motions, (*id.*, ex. 7). With respect to Count II, the Delaware Superior Court denied GSK's motion for summary judgment. (*Id.* at 10-21) And with respect to Count III, the Delaware Superior Court converted GSK's motion to dismiss the Count into a motion for summary judgment, and then severed Count III from the rest of the case, with resolution of Count III to proceed after trial on Count II (if necessary). (*Id.* at 21, 30)

In September 2018, the parties tried Count II before a jury, which ultimately returned a verdict for DRIT. (D.I. 6, ex. 5) On October 17, 2019, the Delaware Superior Court denied GSK's motion for judgment as a matter of law on Count II. (*Id.*, ex. 6 at 3-8) The parties appealed/cross-appealed with respect to Counts I and II. (D.I. 1, ex. 8 at 3, 10-12) On March 3, 2021, the Supreme Court of Delaware issued a decision that affirmed the Delaware Superior Court's ruling for GSK with respect to Count I and reversed the judgment for DRIT with respect to Count II. (*Id.* at 3)

On March 31, 2021, DRIT requested that the Delaware Superior Court decide the merits as to Count III. (*Id.*, ex. 10 at ECF page no. 550-52) GSK thereafter moved for entry of a revised final judgment in GSK's favor with respect to Counts I and II, which was granted on June 4, 2021. (*Id.* at ECF page no. 670-71)

**B.     Procedural History**

On June 10, 2021, GSK filed a Notice of Removal of Count III (the "Notice of Removal") with this Court. (D.I. 1) On June 24, 2021, DRIT filed the instant Motion, (D.I. 4), which was fully briefed as of July 22, 2021, (D.I. 9). On November 9, 2021, United States District Judge Leonard P. Stark referred this case to the Court to resolve all pre-trial matters up to and including expert discovery matters, pursuant to 28 U.S.C. § 636(b). (D.I. 16)

4

## II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. § 1441(a). A district court has original jurisdiction over a civil action "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, as well any civil action "arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks[,]" 28 U.S.C. § 1338(a). Pursuant to 28 U.S.C. § 1454 ("Section 1454"), any party is authorized to remove the latter group of such claims to federal court. 28 U.S.C. § 1454.

As explained by the Supreme Court of the United States in *Gunn v. Minton*, 568 U.S. 251 (2013), a case can "aris[e] under" federal law in two ways. First and most directly, "a case arises under federal law when federal law creates the cause of action asserted." *Gunn v. Minton*, 568 U.S. 251, 257 (2013).[2] Second, if a plaintiff brings a state law claim that necessarily raises a federal issue, the claim may also "aris[e] under" federal law, such that the district court will have original jurisdiction over the state law claim, so long as four factors (the "*Gunn* factors") are met: "if [the] federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress[.]" *Id.* at 258; *see also Sanyo Elec. Co., Ltd. v. Intel Corp.*, C.A. No. 18-1709-RGA, 2019 WL 1650067, at *4 (D. Del. Apr. 17, 2019). This second type of federal "arising under" jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum

---

[2] A patent infringement lawsuit, for example, would arise under federal law in this way because such a suit is authorized by federal statute (i.e., 35 U.S.C. §§ 271, 281). *Gunn*, 568 U.S. at 257.

offers on federal issues[.]" *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). However, only a "special and small category" of cases will meet all four of the *Gunn* factors. *Gunn*, 568 U.S. at 258 (internal quotation marks and citation omitted); *Sanyo Elec.*, 2019 WL 1650067, at *4 ("[J]urisdiction pursuant to [the *Gunn* factors] is rare."). The "mere presence of a federal issue in a state cause of action does not automatically confer" federal jurisdiction. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Sanyo Elec.*, 2019 WL 1650067, at *4.

Upon removal of an action to federal court, a plaintiff may challenge such removal by moving to remand the case back to state court. 28 U.S.C. § 1447(c). The party that removed the action bears the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Sanyo Elec.*, 2019 WL 1650067, at *4. Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand. *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014); *Sanyo Elec.*, 2019 WL 1650067, at *4.

In addition to arriving at federal court with a claim that arises under federal law, a removing party must also be on time. *See, e.g.*, *Univ. of Ky. Rsch. Found., Inc. v. Niadyne, Inc.*, Civil No. 13-16-GFVT, 2013 WL 5943921, at *7 (E.D. Ky. Nov. 5, 2013). Typically, a defendant must file a notice of removal within 30 days after the receipt of the initial pleading, or within 30 days after receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(2)(B), (C)(3) ("Section 1446(b)"). Section 1454 allows for the 30-day deadline in Section 1446(b) to be extended "at any time for cause shown." 28 U.S.C. § 1454(b)(2).

## III.   DISCUSSION

GSK's Notice of Removal asserts that because resolving Count III itself requires deciding a substantial issue of federal patent law—i.e., when a statutory disclaimer of a patent becomes effective[3]—this Court has exclusive jurisdiction over Count III. (D.I. 1 at ¶¶ 9-10, 12; *see also* D.I. 8 at 4-10) Now with its Motion, DRIT argues that this case should be remanded to the Delaware Superior Court because: (1) GSK's notice of removal is untimely; and (2) the patent issue implicated by DRIT's state law claim in Count III does not arise under federal law (such that consequently, this Court lacks subject matter jurisdiction). (D.I. 5) For the reasons discussed below, the Court agrees with DRIT that the case should be remanded because, at a minimum, GSK failed to timely file its Notice of Removal.

It is undisputed that the 30-day clock for removal of this case began running on April 25, 2018—the date the Delaware Superior Court deemed DRIT's amended complaint asserting Count III filed and served. (*Id.* at 10; D.I. 8 at 10-14; D.I. 9 at 1); *see also Cont'l Warranty, Inc. v. Warner*, Civ. No. 13-1187-SLR, 2014 WL 2754931, at *1 (D. Del. June 17, 2014) ("The 30-day removal period begins when the defendant is formally served."). Thus, GSK would have had to remove the case by May 25, 2018 to be within the 30-day window. GSK did not do so; instead, GSK filed its Notice of Removal over three years later, on June 10, 2021. (D.I. 1; *see also* D.I. 8 at 12; D.I. 9 at 2)

Although it removed this case well outside of the 30-day deadline, GSK asserts that its removal was not untimely because it has shown cause to extend the 30-day deadline, pursuant to Section 1454. (D.I. 8 at 1, 10-14) To that end, GSK argues that had it removed right after

---

[3]  More specifically, as GSK explains it, the dispute over Count III goes to whether GSK owes DRIT royalties on the '092 patent from April 27, 2015 through July 16, 2015; thus, it turns on "the question of whether a patent disclaimer is effective upon filing if the filing authorizes the PTO to collect the appropriate fee from the filer's deposit account[,] or if the disclaimer is not effective until the fee is actually credited by the PTO." (D.I. 8 at 3)

7

DRIT's motion to amend was granted, this would have wasted many years' worth of resources that the parties had already spent litigating the case in Delaware Superior Court, and would have delayed the time it took for GSK "to vindicate itself as to Counts I and II." (*Id.* at 1, 13) Furthermore, as an additional reason supporting its delayed removal of this case, GSK notes that Count III was severed from the case in August 2018 and remained inactive for much of the entire period of delay. (*Id.*)

In order to have the removal deadline extended "for cause shown" under Section 1454, the removing party bears the burden of establishing "some reason for why the untimely removal should be excused." *Sovereign Int'l, Inc. v. Minturn*, Case No. 4:20-cv-00298-SRB, 2020 WL 3124315, at *3 (W.D. Mo. June 12, 2020) (citing cases). Section 1454 does not define "cause shown." But federal courts have looked for guidance to authorities that interpret the "good cause" standard set out in Federal Rule of Civil Procedure 6(b) ("Rule 6(b)") for extending deadlines in litigation generally. *Recif Res., LLC v. Juniper Cap. Advisors, L.P.*, Civil Action No. H-19-2953, 2019 WL 5457705, at *2 (S.D. Tex. Oct. 24, 2019); *NematicITO, Inc. v. Spectrum Five LLC*, Case No. 16-cv-01859-RS, 2016 WL 3167181, at *4 (N.D. Cal. June 6, 2016). The good cause standard is not a rigorous one, but it requires a reasonable explanation for the party's delay. *NematicITO, Inc.*, 2016 WL 3167181, at *4; *Andrews v. Daughtry*, 994 F. Supp. 2d 728, 735 (M.D.N.C. 2014).[4] Courts have analyzed whether good cause has been shown

---

[4] GSK points out that Congress enacted Section 1454 to "make removal of patent and copyright claims easier." (D.I. 8 at 10-11 (quoting *Donahue v. Tokyo Electron Am., Inc.*, Case No. A-14-CA-563-SS, 2014 WL 12479285, at *7 (W.D. Tex. Sept. 2, 2014)) Indeed, Section 1454 was created in 2011 as part of the Leahy-Smith America Invents Act, and it effectively abrogated the Supreme Court's decision in *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002). *See Niadyne*, 2013 WL 5943921, at *5. The *Holmes Grp.* Court had ruled that a defendant's counterclaim asserting non-infringement could not serve as the basis for a district court's "arising under" jurisdiction, because it was a plaintiff's well-pleaded complaint (and not a defendant's counterclaim) that dictated whether a case "arises

under Rule 6(b) (and, consequently, Section 1454) utilizing four factors: (1) the potential for prejudice to other parties; (2) the length of the delay and its impact on the case; (3) the reason for the delay and whether it was in the removing party's control; and (4) whether the removing party has acted in good faith. *Recif Res.*, 2019 WL 5457705, at *2; *Hill Country Trust v. Silverberg*, 1:18-CV-635-RP, 2018 WL 6267880, at *8 (W.D. Tex. Nov. 28, 2018); *see also* (D.I. 5 at 11; D.I. 8 at 11; D.I. 9 at 2). Applying these factors to the facts at hand, the Court finds that GSK has not shown cause for its extension of the removal deadline.

With regard to the first factor—the potential for prejudice to other parties—DRIT has surely suffered some prejudice due to GSK's delay in removing this case. (D.I. 5 at 11-12; D.I. 9 at 2) Instead of timely removing the case following its receipt of DRIT's amended complaint asserting Count III, GSK chose instead to keep litigating that claim in state court. Accordingly, DRIT filed a motion for partial summary judgment on Count III (which the parties briefed to completion), while GSK moved to dismiss Count III for lack of subject matter jurisdiction and on the merits. (D.I. 5 at 11-12; *see also* D.I. 1, ex. 6 at 7) The parties then argued these motions before the Delaware Superior Court. (D.I. 5 at 12) Although GSK attempts to characterize any resulting prejudice to DRIT as "minimal[,]" (D.I. 8 at 11), courts have found prejudice to exist in similar circumstances, *see, e.g.*, *NematicITO, Inc.*, 2016 WL 3167181, at *4 (finding prejudice

---

under" federal law for removal purposes. 535 U.S. at 829-34. Thus, by enacting Section 1454, Congress "broadened federal court removal jurisdiction to better ensure that whenever claims arise under federal patent law, they are removable, irrespective of who asserted them." *See Niadyne*, 2013 WL 5943921, at *5. Nevertheless, courts evaluating motions to remand have stressed that the timing provisions of Sections 1446 and 1454 are important and must be followed, even if a claim arises under federal patent law; these courts reason that if Congress believed otherwise, it would have simply removed all time limitations in enacting Section 1454. *See, e.g.*, *Accutrax, LLC v. Kildevaeld*, 140 F. Supp. 3d 168, 173 (D. Mass. 2015); *Andrews*, 994 F. Supp. 2d at 735-36; *Niadyne*, 2013 WL 5943921, at *10-11; *SnoWizard, Inc. v. Andrews*, Civil Action No. 12-2796, 2013 WL 3728410, at *5 (E.D. La. July 12, 2013).

where the defendant filed a notice of removal mere days before its deadline to respond to the plaintiffs' motion for summary adjudication, as plaintiffs "have expended considerable time, effort, and resources during this litigation and to prepare its motion for summary adjudication"). GSK made DRIT jump through a number of economic and logistical hoops to contest Count III in the Superior Court—requiring DRIT to perform a costly four-month "test run" of its merits arguments—only to then ask DRIT to do the same thing again three years later in federal court. There is some prejudice there.

As for the second factor—length of the delay and its impact on the case—GSK posits that the three-year delay really had "no impact" on the proceedings; indeed, GSK argues that the delay allowed for the possibility of conserving party and judicial resources. (D.I. 8 at 12) GSK suggests this is so because Count III could have ended up moot if the Delaware Supreme Court had upheld the jury's verdict for DRIT on Count II. (*Id*.) But as an initial mater, the Court agrees with DRIT that GSK's framing of this issue is a bit misleading. (D.I. 9 at 2) When GSK decided not to remove the case by the 30-day statutory deadline in May 2018, it was not looking to conserve anyone's resources. After all, the Delaware Superior Court did not sever Count III until August 2018, and when it did so, it acted *sua sponte*—not because GSK had suggested it take that path. So GSK's delay in removing Count III—at least in the period between April 2018 and August 2018—*did* have an impact. Not only did it waste DRIT's resources, but it also encumbered the resources of the Delaware Superior Court. That Court had to consider the parties' briefs regarding Count III, hear oral argument, and issue an opinion setting out the relevant facts and legal issues (in which it determined that Count III would be severed pending the trial on Count II). (*Id.* at 2-3; *see also* D.I. 5 at 12) None of this work would have had to occur in state court had GSK timely removed. Courts have repeatedly and consistently found

that when the removing party first actively engaged in state court litigation, and then belatedly removed a claim, the resulting drain on state court resources militates in favor of a finding of no cause shown under Section 1454. *See, e.g.*, *Finjan, Inc. v. Trustwave Holdings, Inc.*, C.A. No. 20-372-LPS, (D.I. 42 at 5), (D. Del. Mar. 31, 2021) (hereinafter, "*Finjan*") (finding that the removing party's 18-month delay in removing the case was "extreme" and "if effective, could adversely affect both the state court (by wasting the extensive efforts it has expended in handling the parties' dispute) and this Court (which might have to replough ground already covered by Judge Carpenter)"); *Hill Country Trust*, 2018 WL 6267880, at *9 (finding that this factor weighed against extending the removal deadline under Section 1454, where in the two months between the expiration of the 30-day removal deadline and the defendant's removal, the defendant "was an active participant in state court litigation"); *XIP LLC v. Commtech Sales LLC*, NO. 4:15-CV-664-A, 2015 WL 6724933, at *4 (N.D. Tex. Nov. 3, 2015) (finding no cause shown to extend the removal deadline under Section 1454, where the removing defendants had first "tried unsuccessfully to gain a favorable outcome in the state court through the summary judgment process"); *Andrews*, 994 F. Supp. 2d at 735 (finding no cause for a three-month delay under Section 1454, where during the intervening time, the removing defendant "actively engaged the state court in the litigation process" by petitioning the state court to transfer the case and filing a motion to dismiss); *Niadyne*, 2013 WL 5943921, at *10 ("As an initial matter, allowing a case to be litigated for an extensive period of time in state court only to permit removal very late in the day unnecessarily transgresses the important notions of conservation of resources and judicial economy.").

      With regard to the third factor—the reason for GSK's delay and whether it was in GSK's control—GSK first turns the tables and faults DRIT; it argues that DRIT added Count III late in

the state court case, at a point when removal would have wasted multiple years of prior litigation in that Court. (D.I. 8 at 12-13) But DRIT reasonably counters that: (1) it only became aware of the facts underlying Count III during discovery, including by taking depositions of GSK's witnesses; and (2) the Delaware Superior Court ultimately found its motion to amend to add Count III to be well-founded, even though that motion was filed at a later stage of the litigation. (D.I. 5 at 6; D.I. 9 at 3) So the Court does not see why DRIT's timeline for amending should have anything to do with how this factor comes out. GSK next argues that any delay was justified because of the years spent litigating the other claims in the case. (D.I. 8 at 13) The Court understands that position, as at the time the statutory window for removal was closing on Count III, the other claims (including the still-live Count II) had been litigated in state court for quite a while. But as DRIT retorts, had GSK sought removal of the entire case back in mid-2018, either party could have sought remand of Count II back to the Delaware Superior Court pursuant to Section 1454(d)(2). (D.I. 9 at 3) Finally, GSK's suggestion that it delayed removal because of the Delaware Superior Court's severance of Count III, (D.I. 8 at 13), again ignores that the Count was severed many months after GSK's 30-day removal deadline had expired, (D.I. 9 at 4).[5] In the end, the delay here was in GSK's control, and there was not a sufficiently good reason for it.

As for the fourth factor—whether GSK has acted in good faith—DRIT contends that GSK removed this case "only after testing the waters with the Superior Court[,]" and that this

---

[5] At one point in its answering brief, GSK suggests (without citation) that the Court should excuse its delay in removing this case because the Delaware Superior Court has "already balked at resolving a novel issue of patent law that should be decided by this Court." (D.I. 8 at 1) But that kind of language is not fair to the Delaware Superior Court. That Court in fact indicated that it would be well-prepared to rule on this issue, depending on the outcome of GSK's anticipated attempt at removal. (D.I. 9 at 1; *see also* D.I. 1, ex. 10 at ECF Page No. 659-61) This is therefore not a valid reason to ignore GSK's belated removal.

demonstrates bad faith conduct. (D.I. 5 at 13-14 (citing *Sovereign Int'l, Inc.*, 2020 WL 3124315, at *3 ("[T]he timing provisions of § 1446 and § 1454 are important because they limit the ability of the Defendant to test the waters in one forum and, finding them inhospitable, move to another forum that might be more sympathetic to its views.") (internal quotation marks and citation omitted)); *see also* D.I. 9 at 4-5) In other words, DRIT is suggesting that GSK: (1) observed the Delaware Superior Court's comments and views about Count III (as well as its comments/views about GSK's case more generally) over the last few years; (2) from that, likely thought that the Delaware Superior Court would rule against it on the merits to Count III; and thus (3) in bad faith, decided to remove Count III to this Court, to try to get a more favorable decision than what was surely coming in the state forum. (D.I. 5 at 13; D.I. 9 at 4-5 (citing D.I. 6, ex. 6 at 12 n.33)) That could be what is going on here. But making a finding that a party has engaged in bad faith is a pretty serious thing for this Court to do. Maybe such a finding would be warranted if it really was clear that when GSK removed the case, it knew it stood to lose on Count III in state court, or if GSK had by then already suffered some type of adverse decision relating to Count III. *Cf. Mirowski Fam. Ventures, LLC v. Bos. Sci. Corp.*, Civil No. WDQ-13-2627, 2014 WL 2574615, at *6 (D. Md. June 5, 2014) (citing cases); *Niadyne*, 2013 WL 5943921, at *10. But the record is not clear that this is what happened here (as GSK notes). (D.I. 8 at 14 n.3) So the Court concludes that this factor is neutral.[6]

---

[6] That said, when briefing this factor, GSK also asserted that its litigation regarding Count III in the Delaware Superior Court, and its subsequent late removal of the case to federal court, was "entirely permissible and not inconsistent with typical litigant practice in such situations." (D.I. 8 at 14) That seems a bridge too far. The two authorities that GSK cites in support for the assertion that its conduct here was "typical" say nothing of the sort. (D.I. 9 at 4) Instead, both authorities stand for the proposition that a defendant's conduct in defending a state-court action *before the expiration of the statutory (i.e., 30-day) removal period* does not constitute waiver of the defendant's right to remove. *See Liebau v. Colom. Cas. Co.*, 176 F. Supp. 2d 1236, 1241, 1243-44 (D. Kan. 2001) (finding that defendant removed the action

13

In sum, three of the four relevant factors weigh against a finding of cause pursuant to Section 1454 (with the other being neutral).[7] GSK's lack of timely action in removing the case caused real delay in the resolution of the instant dispute, it caused prejudice to DRIT and it promoted inefficiency in the federal and state court systems. As a result, the Court cannot find that cause exists for the delay, and so it recommends that DRIT's Motion be granted such that the case is remanded to the Delaware Superior Court.[8]

---

"within 30 days of the running of the statutory period" set out in Section 1446, and that defendant's prior efforts in seeking to set aside a default judgment and filing an answer and a motion to dismiss "did not constitute a waiver of [the defendant's] right to remove the case"); 14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3731 (4th ed. Apr. 2021 update) ("A defendant's conduct in defending the state-court action *prior to the end of the two statutory 30-day periods* established by Section 1446(b) will not constitute waiver of the right to remove.") (emphasis added). This proposition is irrelevant here, as GSK's removal came over three years after the statutory 30-day removal period had expired. (*See* D.I. 9 at 4)

[7] While there are a number of cases in which courts have found that the removing party failed to establish cause for untimely removal under Section 1454, there are only a handful of cases in which courts have found cause to be demonstrated. Generally, in these latter cases, the delays were short, and there was not extensive litigation in the state court prior to removal. *See, e.g.*, *O'Donnell/Salvatori Inc. v. Microsoft Corp.*, Case No. C20-882-MLP, 2020 WL 5269946, at *3 (W.D. Wash. Sept. 4, 2020) (concluding that the defendant timely removed after learning that a copyright claim was at issue and that, even if it did not, the time limitations should be extended for cause shown under Section 1454, because the short delay in removing the matter did not prejudice plaintiff, there had not been extensive litigation in the state court action and the defendant had filed its notice of removal 71 days after the complaint was filed); *Van Steenburg v. Hageman*, No. SA:14-CV-976-DAE, 2015 WL 1509940, at *6 (W.D. Tex. Mar. 31, 2015) (finding good cause to extend the 30-day deadline under Section 1454, where the defendants filed their notice of removal 20 days after the deadline and where there was no action taken in the case between the 30-day deadline and the date that defendants removed the case, such that "the late removal had no impact on the proceeding and did not result in prejudice to [p]laintiffs"); *Donahue*, 2014 WL 12479285, at *7 (concluding that defendants established cause under Section 1454, where the delay was approximately three weeks and defendants had not first extensively litigated in state court).

[8] The parties also dispute whether the Court lacks subject matter jurisdiction over the claim at issue—that is, whether there is "arising under" jurisdiction in this Court as to Count III. The prototypical case in which such jurisdiction exists is "one in which the federal government itself seeks access to a federal forum, an action of the federal government must be adjudicated, or where the validity of a federal statute is in question." *MHA LLC v. HealthFirst,*

14

An order remanding a case may require payment of just costs and attorney fees incurred as a result of the removal. 28 U.S.C. § 1447(c). With its Motion, DRIT also moves for an award of its related costs and expenses, including attorney fees. (D.I. 5 at 17-19; D.I. 9 at 9-10) Such an award is appropriate only if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see also Cont'l Auto. Sys., Inc. v. Nokia Corp.*, C.A. No. 21-345-MN, 2021 WL 5299243, at *4 (D. Del. Nov.

---

*Inc.*, 629 F. App'x 409, 413 n.6 (3d Cir. 2015). Because the Court has above concluded that GSK's removal of the case is untimely, it need not address this subject matter jurisdiction issue in order to recommend that the case be remanded to state court. *See, e.g.*, *Mirowski Fam. Ventures, LLC*, 2014 WL 2574615, at *6 n.24. That said, the Court notes that it seems unlikely that there is subject matter jurisdiction over Count III.

In their briefing as to this issue, the parties are disputing the applicability of the third *Gunn* factor: whether the federal issue raised by DRIT's state law breach of contract claim (i.e., whether a statutory disclaimer becomes effective on the date that the patentee authorizes the PTO to deduct the required fee from a deposit account, or only once the required fee is actually paid) is sufficiently "substantial." (D.I. 5 at 14-17; D.I. 8 at 5-10; D.I. 9 at 6-9) The "substantiality" inquiry looks to "the importance of the issue to the federal system as a whole" and not the significance "to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. An issue is likely to be substantial if it presents a pure issue of law, the resolution of which would be "controlling in numerous other cases." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006); *see also Gunn*, 568 U.S. at 262 (noting that if a state law claim raises a novel question of patent law that "does not arise frequently, it is unlikely to implicate substantial federal interests"); *see also Inspired Dev. Grp., LLC v. Inspired Prods. Grp., LLC*, 938 F.3d 1355, 1364 (Fed. Cir. 2019) (explaining that a substantial federal issue is more likely to be present if a pure issue of federal law is dispositive of the case, if the court's resolution of the issue would control numerous other cases, and if the government has a direct interest in the availability of a federal forum to vindicate its own administrative action).

Here, at minimum, it does not seem likely that the Delaware Superior Court's resolution of this issue would affect "numerous other cases." As DRIT points out, it appears that the key issue here is one that rarely, if ever, comes up in litigation. (D.I. 5 at 16; D.I. 9 at 7-8) GSK speculates about some hypothetical related scenarios that might occur in future cases. (D.I. 8 at 8) But it points to no credible evidence suggesting that this type of fee payment/disclaimer issue would be likely to occur frequently in the future. (D.I. 9 at 8) And to the extent that this issue does ever arise in the future, as DRIT notes, a federal court would not be bound by the Delaware Superior Court's ruling on a patent issue. Instead, the federal court's subsequent resolution of the issue would "lay[] to rest any contrary state court precedent." (*Id.* at 8-9 (quoting *Gunn*, 568 U.S. at 262))

15

15, 2021). Although GSK's arguments regarding removal/remand did not prevail here, they were not without at least arguable support; therefore, the Court denies DRIT's request for attorney fees and costs. *Finjan* at 6; *Cont'l Auto. Sys., Inc.*, 2021 WL 5299243, at *4; *see also, e.g.*, *Niadyne.*, 2013 WL 5943921, at *11.

## IV.  CONCLUSION

For the foregoing reasons, the Court recommends that DRIT's Motion be GRANTED such that the case be remanded. As to the part of the Motion in which DRIT seeks just costs and expenses, it ORDERS that DRIT's request be DENIED.[9]

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: February 18, 2022

*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[9]  GSK filed a motion for leave to file a sur-reply ("Motion for Leave") in connection with this Motion. (D.I. 10) A court may grant leave to file a sur-reply brief if it responds to new evidence, facts or argument. *St. Clair Intell. Prop. Consultants, Inc. v. Samsung Elecs. Co. Ltd.*, 291 F.R.D. 75, 80 (D. Del. 2013). GSK's Motion for Leave is DENIED. DRIT did not raise new arguments in its reply brief, but instead simply responded to arguments raised in GSK's answering brief. (D.I. 10 at 1-2; D.I. 11 at 1-2) This is not grounds to grant a motion seeking leave to file a sur-reply. *See, e.g.*, *Trans Video Elecs., Ltd. v. Netflix, Inc.*, Civil Action No. 12-1743-LPS, 2014 WL 900929, at *1 n.1 (D. Del. Mar. 4, 2014).